In re Richard Clarence ALDRICH aka Richard Aldrich, Richard C. Aldrich, R.C. Aldrich, Dick Aldrich, and Barbara Joy Aldrich, aka Barbara J. Aldrich, Barbara Aldrich, B.J. Aldrich, Debtors.

Richard Clarence ALDRICH, Plaintiff-Appellant,

v. ·

Lilith I. IMBROGNO, Defendant-Appellee.

Bankruptcy No. 181–01451.
Adv. No. 181–0691.
BAP No. EC–82–1284 VAsE.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Feb. 18, 1983.

Decided Oct. 26, 1983.

T.N. Petersen, Merced, Cal., for plaintiff-appellant.

Leonard C. Herr, Hansen & Wilson, Merced, Cal., for defendant-appellee.

Before VOLINN, ASHLAND and ELLIOTT, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge.

### I. BACKGROUND

#### A.

The record before us consists principally of claims and counterclaims by the parties in the state and bankruptcy courts. Our understanding of the circumstances which resulted in this appeal is as follows:

Co-debtor, Richard Aldrich, and his former wife, Lilith Imbrogno, dissolved their marriage in California State Court (the dissolution action) by interlocutory judgment in May, 1974. The interlocutory judgment approved and incorporated the terms of their property settlement agreement which provided *inter alia* that Imbrogno would receive $1.00 per month for her support from Aldrich. In the section of the property settlement agreement entitled "Division of Community Property", Imbrogno was given an undivided one-half interest in unimproved real property in Maine and New Hampshire; and monthly payments from Aldrich of 36% of his military retirement benefits as her portion of the total community interest herein.

On March 6, 1981, Imbrogno commenced an action in California Superior Court No. 65087 (the state damage action) against Aldrich for money damages for his alleged breach of the property settlement agreement. Imbrogno averred that Aldrich transferred the unimproved real property in Maine and New Hampshire without her knowledge or consent, and without accounting to her for her interest in the property.

On June 22, 1981, Aldrich and his present wife, Barbara Aldrich filed a joint bankruptcy petition pursuant to 11 U.S.C. Chapter 7.

Aldrich failed to make a number of payments to Imbrogno of his military retirement benefits. On July 27, 1981, Imbrogno filed an order to show cause in the state dissolution action to require Aldrich to bring the military retirement benefit ar-

rearages current and to make assurances for future payments.

On August 5, 1981, Aldrich commenced an adversary proceeding No. 181–561 in the bankruptcy court (bankruptcy stay action) to enforce the automatic stay of 11 U.S.C. Section 362 in light of the show cause proceedings in the state dissolution action and certain discovery attempted by Imbrogno in the state damage action. After a hearing in the bankruptcy stay action, on August 28, 1981, the bankruptcy court ordered that relief from the 11 U.S.C. Section 362 stay be granted to Imbrogno to determine her ownership in the state dissolution action "with regard to thirty-six percent (36%) of the United States Air Force Military Retirement monies received by RICHARD C. ALDRICH in *futuro*"; that Imbrogno was "stayed from pursuing in State Court those monies RICHARD ALDRICH is presently in arrears"; and that the state damage action was "also stayed".

On October 5, 1981, Imbrogno filed adversary proceeding no. 181–0782 in the bankruptcy court (bankruptcy fraudulent transfer action) to have the conveyances of real property in Maine and New Hampshire set aside as fraudulent or placed in a resulting trust; to have the proceeds from the conveyances placed in a constructive trust, for damages against Aldrich for his failure to pay Imbrogno her share of the military retirement benefits and her share of the proceeds from transfer of the real property; and for an order declaring the debts for failure to pay the military retirement benefits and for wrongful conveyance of the real property were nondischargeable.

On October 9, 1981, the bankruptcy court modified its August 28, 1981, order in the automatic stay proceeding to grant Imbrogno relief from the stay only for the purpose of seeking a determination from the California Superior Court "as to whether she is the owner of 36% of Plaintiff RICHARD C. ALDRICH'S United States Air Force Military Retirement". Pending such a determination, Imbrogno was "stayed from any collection remedies" without first obtaining an order, on notice to Aldrich, from the state court allowing her to pursue such collection remedies.

### B.

On December 7, 1981, the debtor received a discharge. The order granting discharge provides as follows:

1. The above-named debtor is released from all dischargeable debts.

2. Any judgment heretofore or hereafter obtained in any court other than this court is null and void and determination of the personal liability of the debtor with respect to any of the following:

   (a) debts dischargeable under 11 U.S.C. Section 523;

   (b) unless heretofore or hereafter determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4), and (6) of 11 U.S.C. Section 523(a);

   (c) debts determined by this court to be discharged under 11 U.S.C. Section 523.

3. All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from commencing, continuing or employing any active process or act to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived.

### C.

On February 9, 1982, Aldrich filed a motion for leave to file a counterclaim in the bankruptcy fraudulent transfer proceeding. Imbrogno objected to the motion because the trial date of March 4, 1982 would have to be continued. During the hearing on this motion, the bankruptcy court orally ruled that the stay would be lifted as to all issues in this adversary proceeding except the issue of dischargeability which would remain with the bankruptcy court. However, no written order was ever entered on this decision to lift the stay.

## II. THE ORDER ON APPEAL

On May 20, 1982, Aldrich filed another adversary proceeding for the purpose of enjoining Imbrogno from pursuing the state court actions based on debts presumably discharged as to him. Aldrich contended that the December 7, 1981 discharge, discharged those debts which were the subject of the state court proceedings. A hearing on a motion for a preliminary injunction on the state court proceeding was held on June 15, 1982, and an order was entered on June 29, 1982, denying Aldrich's request for injunctive relief. Further, the order lifted "all stays with regard to the state court proceedings in which LILITH IMBROGNO is pursuing any action arising out of the dissolution of her marriage to RICHARD CLARENCE ALDRICH and related actions", and provided that Aldrich "and/or his attorney of record" were to pay $250 in attorneys' fees and costs to Imbrogno's attorneys of record.

Aldrich has appealed the June 29, 1982 order contending that the bankruptcy court erred in denying his requests for injunctive relief, in lifting the stay to proceed in state court despite the permanent injunction of 11 U.S.C. Section 524, and by awarding $250 fees and costs to Imbrogno's attorneys.

## III. EFFECT OF DISCHARGE

### A.

An important aspect of this case is the interaction of 11 U.S.C. Sections 362, 523, 727, and 524. With the filing of a petition in bankruptcy, 11 U.S.C. Section 362 automatically provides the debtor with a broad temporary stay or injunction against certain actions by creditors against the debtor.

Upon the granting of a discharge, the temporary injunction of 11 U.S.C. Section 362 dissolves and is replaced by the permanent injunction of 11 U.S.C. Section 524. *See,* 11 U.S.C. Section 362(c)(2)(C). A discharge under 11 U.S.C. Section 524—

(a)

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . ;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt [1] as a personal liability of the debtor, or from property of the debtor, . . . .

The permanent injunction provided by 11 U.S.C. Section 524(a)(2) enjoins creditor actions against debts discharged under 11 U.S.C. Section 727 which provides for exceptions as follows:

(b) Except as provided in Section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, . . .

Thus, the provisions of 11 U.S.C. Section 524 would not enjoin actions of creditors who successfully invoke 11 U.S.C. Section 523.

### B.

For our purposes, the exceptions to discharge are divided into two major groups; those debts as to which the bankruptcy courts have exclusive jurisdiction to determine exceptions from discharge and those debts where the bankruptcy court does not have such exclusive jurisdiction. This grouping is created by 11 U.S.C. Section 523(c) which gives bankruptcy courts exclusive jurisdiction to determine the dischargeability of debts under 11 U.S.C. Section 523(a)(2), (fraud or deception); (a)(4), (fiduciary fraud, embezzlement or larceny); and (a)(6), (willful and malicious injury to person or property). *See also,* House Report No. 95–595, 95th Cong., 1st Sess. (1977) 365; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 80 U.S.Code Cong. & Admin. News 1978, p. 5787.

---

1. The "such debt" language refers to "any debt discharged under Section 727 . . ." as stated in 11 U.S.C. Section 524(a)(1). 3 *Collier on Bankruptcy 15th Ed.* ¶ 524.01.

Bankruptcy Rule 409, which was then applicable, set forth the procedures for determining dischargeability of a debt in the bankruptcy court. Rule 409(a)(1) requires that an adversary proceeding be initiated to determine dischargeability under 11 U.S.C. Sections 523(a)(2), (a)(4) and (a)(6). A complaint must be filed in the bankruptcy court within the period set by the court. B.R. 409(a)(2). Failure to initiate timely an adversary proceeding for dischargeability under these subsections of 11 U.S.C. Section 523 may result in discharge of a debt despite the fact that it might be of a character that would otherwise be excepted from discharge. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 365; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 80. *See also*, 3 *Collier on Bankruptcy 15th Ed.* ¶ 523.05.

With respect to all other subsections of 11 U.S.C. Section 523(a), the bankruptcy court has concurrent rather than exclusive jurisdiction to determine whether a debt is excepted from discharge. *See e.g.*, 3 *Collier on Bankruptcy 15th Ed.* ¶ 523.06. It would therefore appear that such contests to dischargeability could be brought in either an appropriate state court or in the bankruptcy court, and could be brought before or after a discharge has been granted to the debtor. *In re Auer*, 22 B.R. 274 (Bkrtcy.E.D.N.Y. 1982); *In re Dirks*, 15 B.R. 775, 8 B.C.D. 517 (Bkrtcy.N.M.1981) (both cases dealing with Section 523(a)(5) alimony and child support). 28 U.S.C. Section 1471.

The order being appealed lifted "any and all bankruptcy stays with regard to state court proceedings in which LILITH IMBROGNO is pursuing any action arising out of the dissolution of her marriage to RICHARD CLARENCE ALDRICH..." Implicit in the language of the order and statements made by the bankruptcy court prior to its entry (Tr. p. 11) is the premise that the "stays" being lifted involve the automatic stay of 11 U.S.C. Section 362.

The 11 U.S.C. Section 362 stay in this case was dissolved and replaced by the 11 U.S.C. Section 524 injunction on December 7, 1981 (based on the order of discharge),

more than seven months *before* the order being appealed was entered. The bankruptcy court therefore erred insofar as it ordered the lifting of the Section 362 stay since it was no longer in effect.

The question remains, nevertheless, whether the court in effect has rejected or deferred to concurrent state court jurisdiction. This, in turn involves examination of the proceeding which resulted in the order of June 29, 1982, now on appeal.

## IV. PRELIMINARY INJUNCTION HEARING

Aldrich requested the bankruptcy court to enjoin all proceedings in the state damage action and state dissolution action on the basis that the continuation of such proceedings was in violation of 11 U.S.C. Sections 524 and 727. From the record it is not clear that the bankruptcy court considered the factors and made the findings necessary to an appropriate determination with respect to the request for preliminary injunction.

The court's order denying Aldrich's motion for a preliminary injunction in effect appears to allow Imbrogno to pursue determinations of liability and collection of property and debts in the state court with respect to her claim for past and future retirement benefits and with respect to her claims concerning the real property. Whether such claims were subject to the exclusive jurisdiction of the bankruptcy court or subject to concurrent jurisdiction of the bankruptcy court and state court, will shed light on whether the bankruptcy court's decision to deflect or defer jurisdiction was in error.

### A. Future Retirement Benefits

It is not clear from the record whether Imbrogno asserts a property interest in 36% of Aldrich's retirement benefits or whether she asserts that Aldrich merely owes her 36% of the retirement benefits of which he retains full ownership. If the former is the situation asserted, it would appear that the state court would have concurrent jurisdiction to grant Imbrogno relief on her claim

for her property. On the present record, it is also possible that the state court, may, as could a bankruptcy court, consider whether despite the seeming specificity of the decree, find and conclude that the monthly payments were in actuality support related and alimony. The retirement benefit payments having been made to Aldrich after the discharge, the property rights of Imbrogno to those payments would only arise after the bankruptcy. In this respect, it is not clear to us the effect intended by the bankruptcy court order of the August 28, 1981, lifting the stay for the state court to determine Imbrogno's interest in the retirement benefits *in futuro,* nor have we been informed of the substance of any decision which the state court has made in this respect.

If Imbrogno is asserting that she has no property interest in the retirement benefit payments, such debt may be subject to discharge unless Imbrogno has asserted the debt to be nondischargeable by filing a complaint in the bankruptcy court prior to the granting of the discharge if nondischargeability is based on 11 U.S.C. Sections 523(a)(2), (a)(4), or (a)(6); or unless as indicated an appropriate action is filed in the state court or bankruptcy court if nondischargeability is based on the other subsections of 11 U.S.C. Section 523(a), particularly Section 523(a)(5).

These factors must be addressed before the bankruptcy court can properly deal with Aldrich's motion for preliminary injunction.

B. Retirement Benefit Arrearages and Real Property/Judicial Economy

In Imbrogno's complaint for nondischargeability, she characterized her claims for her share of the real property in Maine and New Hampshire, and the retirement benefit arrearages as debts which Imbrogno sought to have determined nondischargeable. The grounds for nondischargeability are not entirely clear from the complaint.

■ Imbrogno may be claiming both debts to be nondischargeable on the basis of 11 U.S.C. Section 523(a)(2), (a)(4) and (a)(6). Such claims may not be pursued in the state court as a result of the exclusive jurisdiction granted to the bankruptcy courts by the bankruptcy code. The bankruptcy court erred insofar as it denied Aldrich's motion for a preliminary injunction in this area based on 11 U.S.C. Section 523(c).

While it may be argued that the bankruptcy court might deflect jurisdiction to the state court to determine merely the question of *liability* as distinguished from dischargeability on causes of action which might later be determined by the bankruptcy court under 11 U.S.C. Sections 523(a)(2), (a)(4) or (a)(6), such a bifurcated treatment is not ordinarily an efficient use of judicial resources. Following such a state court hearing, the bankruptcy court would be compelled, if discharge became an issue, to retry the whole case or, at a minimum, review the entire trial conducted at the state level to make an appropriate determination on dischargeability. *In re Houtman,* 568 F.2d 651 (9th Cir.1978), *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

The issue remains concerning Aldrich's right to a preliminary injunction based on a potential claim by Imbrogno for nondischargeability from 11 U.S.C. Section 523(a)(5).[2] The state court having concurrent jurisdiction with the bankruptcy court may proceed on such basis even after the entry of the discharge. The bankruptcy court may have properly denied Aldrich's motion for preliminary injunction here. But, it appears that the bankruptcy court may have failed to consider judicial economy here. Since Imbrogno appears to have challenged the dischargeability of both debts under 11 U.S.C. Section 523(a)(2), (a)(4) or (a)(6) which must be considered by the bankruptcy court, it probably would be

---

**2.** A review of the record would not provide any basis for Imbrogno to pursue an action against Aldrich for nondischargeability based on 11 U.S.C. Sections 523(a)(1), (a)(3), (a)(7) or (a)(8). Therefore, the only remaining grounds for exception to discharge, other than 11 U.S.C. Sections 523(a)(2), (a)(4) and (a)(6) would be 11 U.S.C. Section 523(a)(5), alimony and child support.

782

better, in the interests of conserving judicial resources and the economic interests of the parties, that the issue of nondischargeability under 11 U.S.C. Section 523(a)(5), if asserted, remain with the bankruptcy court. The bankruptcy court should consider these issues on remand.[3]

In light of the trial court's misconceptions with respect to its jurisdiction under 11 U.S.C. Section 523(a)(2), (a)(4) and (a)(6), the aspect of judicial economy was not properly considered.

The bankruptcy court and Imbrogno have alluded to a stipulation made by Aldrich that all issues with respect to these parties would be determined by the state court. Aldrich denies having made such a stipulation. The record not reflecting the existence of such a stipulation, Aldrich should not be bound thereby, particularly in the light of a record marked by such adversary character.

### V. ATTORNEYS FEES

Aldrich and/or his attorneys of record were assessed attorneys fees of $250 for bad faith in bringing the motion for preliminary injunction. In light of our holding that Aldrich's motion has some merit, the bankruptcy court abused its discretion in awarding attorneys fees to Imbrogno's attorneys.

### CONCLUSION

This matter is REVERSED and REMANDED for consideration by the court below consistent with this decision.

---

**3.** Also, the determination of whether the subject debts are alimony must be based on Federal Law, not state law. House Report No. 95–595, 95th Cong. 1st Sess. (1977) 363.